UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA                    :

          v.                    :

HECTOR ROSARIO,                    :
                                                           22 CR 355 (ENV)
                         Defendant.                    :
------------------------------------------------------------------------x

**DEFENDANT HECTOR ROSARIO'S MOTIONS IN LIMINE**

**LOUIS M. FREEMAN**
Freeman, Nooter & Ginsberg
75 Maiden Lane, Suite 907
New York, NY 10038
(212) 608-0808

Nadjia Limani, Associate Counsel
Kestine Thiele, Mentee

*Attorneys for Hector Rosario*

# TABLE OF CONTENTS

Introduction…………………………………………………………………………………1

Background…………………………………………………………………...……………....1-2

Argument………………………………………………………………………………2-17

1. **The Government Should Be Precluded from Introducing Evidence Related to the "Blue Tequila"…………………………………………..…..2-4**

2. **The Government Should Be Precluded from Introducing the Following "Other Acts" Evidence………………………………………………4-10**
   a. **Applicable Law………………………………………………..…….4-6**
   b. **The Government Should Be Precluded from Introducing Evidence Related to or Referencing Prostitution……………………………...6-7**
   c. **The Government Should Be Precluded from Introducing Evidence that Suggests Mr. Rosario Has Engaged in or Plans to Engage in Acts of Violence………………………………………..…..7-9**
   d. **The Government Should be Precluded from Introducing Evidence that Suggests Mr. Rosario Provided Advice on How to Obtain a False Police Report for a Car Accident…………………9-10**

3. **The Government Should Be Precluded from Referencing Organized Crime…..10-11**

4. **The Court Should Strike the Introduction Section of the Indictment as Well as Counts One through Six………………………….…………..…………11-13**

5. **The Government Should Be Precluded from Introducing Mr. Rosario's Nassau County Police Department ("NCPD") Employment and Disciplinary Records……………………………….……………………13-15**

6. **The Government Should Be Precluded from Introducing Evidence Referencing Mr. Rosario's Unrelated Attorneys or Legal Matters….………...………15**

7. **The Government Should Be Precluded from Introducing Evidence Related to Mr. Rosario's Girlfriend and Newborn Child……………………16**

8. **The Government Should Be Precluded from Introducing Evidence that Mr. Rosario Met a Cooperating Witness ("CW-3") Through an Individual Named "Chandler"………………………………………..17**

Conclusion………………………………………………………………………17-18

<u>Introduction</u>

In advance of trial, we move *in limine* for an order 1) precluding the Government from introducing evidence related to the "Blue Tequila"; 2) precluding the Government from introducing the following "other acts" evidence: a) evidence related to prostitution, b) evidence that suggests Mr. Rosario has engaged in or plans to engage in acts of violence, and c) evidence that suggests Mr. Rosario provided advice on how to obtain a false police report for a car accident; 3) precluding the Government from referencing organized crime; 4) striking the introduction section of the Indictment as well as Counts One through Six; 5) precluding the Government from introducing Mr. Rosario's Nassau County Police Department ("NCPD") employment and disciplinary records; 6) precluding the Government from introducing evidence referencing Mr. Rosario's unrelated attorneys or legal matters; 7) precluding the Government from introducing evidence related to Mr. Rosario's girlfriend and newborn child; and 8) precluding the Government from introducing evidence that Mr. Rosario met a cooperating witness ("CW-3") through an individual named "Chandler."

<u>Background</u>

On January 27, 2020, Mr. Rosario was interviewed by two Federal Bureau of Investigation ("FBI") Special Agents in the hallway in front of his apartment. Subsequent to this interview, on August 4, 2022, Mr. Rosario was charged in a multi-count indictment with one count of obstruction of justice (Count Seven) and one count of false statements (Count Eight). Agostino Gabriele, Anthony Pipitone and Vito Pipitone were also charged in this indictment with one count of racketeering (Count One),[1] one count of money laundering conspiracy (Count

---

[1] Anthony Pipitone was charged in Racketeering Act One—Illegal Gambling Business—La Nazionale Soccer Club; Anthony Pipitone and Vito Pipitone were charged in Racketeering Act Two—Illegal Gambling Business—Glendale

Two), one count of illegal gambling business—Gran Caffe (Count Five) and one count of illegal gambling business—Soccer Club (Count Six). Anthony Pipitone was also charged in one count of illegal gambling business—La Nazionale Soccer Club (Count Three) and Anthony Pipitone and Vito Pipitone were also charged in one count of illegal gambling business—Glendale Sports Club (Count Four).

On May 30, 2024, Agostino Gabriele, Anthony Pipitone and Vito Pipitone pled guilty before Your Honor. Mr. Gabriele pled guilty to Count Five of the indictment and Anthony and Vito Pipitone pled guilty to Count One.  Mr. Rosario is the sole remaining defendant proceeding to trial.

<u>**Argument**</u>

## I.    The Government Should Be Precluded from Introducing Evidence Related to the "Blue Tequila"

Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, evidence need not constitute conclusive proof of a fact in issue but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (*quoting New Jersey v. T.L.O.*, 469 U.S. 325, 345, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985)); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010). Rule 401 sets a "very low standard for relevance." *United States v. Al Moayad*, 545 F.3d 139, 176 (2d Cir. 2008). The Court's determination of what constitutes "relevant" evidence is guided by the nature

---

Sports Club; Agostino Gabriele, Anthony Pipitone and Vito Pipitone were charged in Racketeering Act Three—Illegal Gambling Business—Gran Caffe and in Racketeering Act Four—Soccer Club.

of the claims and defense presented. *United States v. Shkreli*, 2017 U.S. Dist. LEXIS 145215, at *5 (E.D.N.Y. June 24, 2017, No. 15-Cr-637 (KAM)).

The Government should be precluded from introducing evidence related to an establishment known as the "Blue Tequila." Such evidence is irrelevant to the charged conduct and should not be admitted, pursuant to Federal Rule of Evidence 401. Unless the Government can proffer evidence demonstrating the establishment's relevance to the charged crimes, such evidence should be precluded. At this point, there is none. Notes from Mr. Rosario's single interview with the FBI on January 27, 2020, at his residence in Mineola, New York, suggest that agents inquired of Mr. Rosario about the Blue Tequila. The agents' questions revolved around whether CW-3 had ownership interest in the establishment and whether prostitution, gambling or narcotics activity had occurred there. Mr. Rosario flatly denied involvement with the Blue Tequila and knowledge of criminal activity that may have occurred there. As the Court is aware, the Government's larger narrative of the instant case involves certain locations at which defendants engaged in or facilitated illegal gambling. The Blue Tequila is not one of such locations, and its connection to Mr. Rosario's case is unclear.

Only evidence that has any tendency to make a fact more or less probable than it would be without the evidence is relevant and can be admitted, and this does not fit the bill. Fed. R. Evid. 401. Even assuming *arguendo* that CW-3, one of Mr. Rosario's friends, did have ownership interest in the Blue Tequila and criminal activity has occurred there, the Government has drawn no connection between the establishment and Mr. Rosario's allegedly false statements. If the Court finds that evidence of the Blue Tequila is relevant, it should nevertheless be excluded due to its unfair prejudicial effect. Without knowing what the Government specifically intends to admit about the Blue Tequila, as an example, even limited facts related to

3

the Blue Tequila hosting criminal activity and CW-3, Mr. Rosario's friend, being associated with the establishment would be unfairly prejudicial to Mr. Rosario. Mr. Rosario does not need to have known much about the establishment, ever been present at the establishment, or had knowledge of criminal activity for its admission to be prejudicial. In his role as a police officer, this kind of evidence would lead the jury to make improper assumptions about Mr. Rosario's proximity to crime and be more likely to convict. But as previously emphasized, unless new evidence is presented by the Government as to the Blue Tequila's relevance to the charged crimes, it should be precluded.

## II.    The Government Should Be Precluded from Introducing the Following "Other Acts" Evidence

### a.    Applicable Law

Evidence of any other crime, wrong or act does not fall within the purview of 404(b) of the Federal Rules of Evidence, "if it arose out of the same transaction or series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). Where "it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Townsend*, 2007 U.S. Dist. LEXIS 32639, 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007), *aff'd United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009).

Where "other acts" evidence does not satisfy the standard described in *Carboni*, to be admissible, it must meet the requirements under Rule 404(b), which provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  It may, however, be admissible for other purposes, such as "proving motive, opportunity, intent,

4

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.

404(b).

> In other words, 'Rule 404(b) bars the admission of defendant's uncharged crimes to prove propensity to commit the crime charged.' *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). At the same time, pursuant to this Circuit's 'inclusionary approach' to such evidence, other-crimes evidence *is* admissible if offered 'for any purpose *other than* to show a defendant's criminal propensity.' *United States v. Mejia*, 545 F.3d 179, 206 (2d Cir. 2008) (emphasis added).

<u>United States v. Williams</u>, 930 F.3d 44, 62 (2d Cir. 2019).

> To determine if evidence was properly admitted under Rule 404(b), we consider 'whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant.' *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (internal quotations marks and citation omitted) (noting that this inquiry is derived from *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988)).

<u>United States v. Torres</u>, No. 21-2665-cr, 2023 U.S. App. LEXIS 1857, at *6-7 (2d Cir. Jan. 25, 2023).

Should a court find that the first two prongs are satisfied, the court must then decide

whether the probative value of the "uncharged bad act" evidence is substantially outweighed by

the danger of unfair prejudice. As the Supreme Court set forth in *Old Chief v. United States*, 519

U.S. 172 (1997), "unfair prejudice" is an "undue tendency to suggest decision on an improper

basis," and invokes, as an example, a jury's "generalizing a defendant's earlier bad act into bad

character and taking that as raising the odds that he did the later bad act now charged (or, worse,

as calling for preventive conviction even if he should happen to be innocent momentarily)." 519

U.S. at 180-81. The Second Circuit has instructed that the probative-prejudice balancing analysis

demands "particularly searching, conscientious scrutiny" in the context of prior crimes evidence

because such evidence poses a severe risk of unfair prejudice. *United States v. McCallum*, 584

5

F.3d 471, 475 (2d Cir. 2009). Indeed, when conducting this balancing, the trial court must remain attentive to the potential for "undermin[ing] the fairness of the trial" with "classic, and powerful, evidence of propensity." *Id.* at 477.

As is true for all evidence, uncharged criminal activity, to be properly admitted, must satisfy Federal Rule of Evidence 403. Rule 403 excludes otherwise relevant evidence if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The district court has broad discretion in considering the exclusion of prior bad act evidence pursuant to this rule. *See United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992).

It is axiomatic that propensity – or "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged" – constitutes one such improper basis for admission. *Old Chief*, 519 U.S. at 180; *see also* Fed. R. Evid. 404(b).

**b. The Government Should Be Precluded from Introducing Evidence Related to or Referencing Prostitution**

The Government should be precluded from introducing evidence related to or referencing prostitution, including any "bad acts" evidence of the same. Such evidence is irrelevant to the charged conduct and any probative value is outweighed by the danger of unfair prejudice. Fed. R. Evid. 401; 403.

Neither the discovery produced thus far, nor the Government's narrative of the case suggests that evidence related to Mr. Rosario's involvement in or knowledge of prostitution are relevant to the allegations. However, out of an abundance of caution, we move to preclude any such "other acts" evidence, as it is not direct evidence of the crimes charged, cannot be offered

6

for any proper purpose under Rule 404(b) and is irrelevant. If the Government does move to admit "other act" evidence of Mr. Rosario being involved in prostitution in any way, though we are not currently aware of any, and the Court finds that such evidence satisfies the first two prongs of the *Scott* test, the likelihood that any probative value would be substantially outweighed by its prejudicial effect is high. Prostitution is a provocative subject—one which many jurors are sure to have strong opinions about. Injecting this trial with this kind of evidence is unnecessary to complete the story of the crimes charged and would only be offered to prove propensity.

Putting aside any Rule 404(b) analysis, evidence that Mr. Rosario, a police officer at the time of the alleged conduct, did not himself engage in any prostitution-related "wrong," but simply associated with people who engaged in or were involved in the prostitution business, would lead to unfair prejudice and potentially confusion of the relevant issues at trial. The jury cannot be permitted to draw generalized, improper conclusions about Mr. Rosario's bad character. As such, this evidence should be precluded.

### c. The Government Should Be Precluded from Introducing Evidence that Suggests Mr. Rosario Has Engaged in or Plans to Engage in Acts of Violence

The Government should be precluded from introducing any evidence that suggests Mr. Rosario has engaged, intends to engage or has any plan to engage in an act of violence. The Government has produced discovery which references violent acts previously attempted and suggests a desire to commit violent acts. For example, at one of the meetings Mr. Rosario had with CW-3, which CW-3 surreptitiously recorded, DOJ 137 (12/6/2017), CW-3 states the following:

> Try to fucking make money, money, money, every time I make money I get fucked. Every fucking time I try to do something to make money I get fucked. Remember the time we were gonna rob the fucking Mexicans? To try to make

7

fucking money? And that shit, yeah, yeah, yeah, that asshole, yeah, yeah, yeah, yeah. Yeah, and then that shit never happened?  It's fucked up, it's fucked up, yeah.

In another recording, HR 901 (1/26/2018), while discussing legal fees owed to an attorney for a previous paternity suit, Mr. Rosario states, "[Y]ou know that I felt like doing? I felt like going to this guy's office and fucking him up, like why would you do that?  You know where I work, I'm not going nowhere, it's not like I'm leaving the country for 8,000 dollars."

 This kind of impermissible propensity evidence is completely irrelevant to the charged crimes, would not be admitted for any proper purpose under Rule 404(b) and would only seek to unduly and inappropriately influence the jury with collateral evidence of bad character. Therefore, it must be excluded.

This case does not involve violence. Mr. Rosario does not have a history of violence and has not been alleged to have engaged in any violent acts. Any evidence suggesting otherwise, including unrealized plans or unserious banter about engaging in a violent act, cannot be admitted as direct evidence. First, such evidence does not arise "out of the same transaction or series of transactions as the charged offense" and is not "inextricably intertwined with the evidence regarding the charged offense." *Carboni*, 204 F.3d at 44. It also cannot be admitted as "other act" evidence. If the Government attempts to offer it pursuant to Rule 404(b), it would be for an impermissible purpose, allowing the jury's imagination to run wild. The Court has the duty of ensuring jurors are not presented evidence that has the sole purpose of unduly influencing their relevant determinations of fact.

The central question at this trial is whether Mr. Rosario knowingly made false statements to the FBI in a January 27, 2020 interview, in particular about the identity of a John Doe and his familiarity with certain gambling businesses. There is no credible argument that evidence of

8

violence, violent proclivities or the condoning of violence by Mr. Rosario is "necessary to complete the story of the crime on trial." *Id.* The purpose of this inflammatory evidence could only be to paint Mr. Rosario in the worst possible light and undermine his presumption of innocence.

> **d.  The Government Should be Precluded from Introducing Evidence that Suggests Mr. Rosario Provided Advice on How to Obtain a False Police Report for a Car Accident**

The Government should also be precluded from introducing evidence that suggests Mr. Rosario provided advice to CW-3 regarding a car accident and obtaining a fraudulent police report.  In HR 901 (1/26/18), another in-person recording of Mr. Rosario and CW-3, CW-3 tells Mr. Rosario that his business partner from the auto body shop was involved in a car accident but failed to get a police report at the scene of the accident.  Mr. Rosario advised CW-3 to tell his partner to call the police and say that the car was parked (depending on where the car was hit) and that a witness gave him the license plate number.

Under a *Scott* analysis, the evidence should be precluded.  First, this evidence does not have a proper purpose under the mandate of Federal Rule Evidence 404(b)(2) and is not relevant to the charged conduct.  However, *assuming arguendo* that the Government identifies a proper 404(b)(2) purpose and relevancy as to the evidence, such evidence should nevertheless be precluded as its probative value does not outweigh its prejudicial effect under Rule 403.  The Supreme Court has defined unfair prejudice as "the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offence charged." *Old Chief*, 519 U.S. at 180.  Here, evidence that Mr. Rosario, a former Nassau County Police Department Detective, is providing advice to CW-3 on how to create a

false police report is not only clearly prejudicial to his defense but presents the risk that the jury may consider this evidence as evidence of guilt. It must therefore be precluded.

III.    **The Government Should Be Precluded from Referencing Organized Crime**

The Government should be precluded from introducing evidence, whether through documents or witness testimony, referencing organized crime, including the mob or mafia, "The Five Families," "La Cosa Nostra," any specific individual's position in or association with the crime families and the names of the crime families themselves. Such evidence is irrelevant and highly prejudicial.

Mr. Rosario's relationships with individuals who have been allegedly associated with the crime families have no bearing on any element of any charge against him. Admission of such evidence would violate Rule 403. Even if the evidence were minimally probative, it is substantially outweighed by unfair prejudice. Akin to gang affiliation, evidence that an individual is a member of a criminal organization like La Cosa Nostra can be highly prejudicial, and courts recognize that it may be appropriate to suppress that identification at trial. *See United States v. Nelson*, 103 F. Supp. 2d 512, 513 (N.D.N.Y. 1999). Mr. Rosario is not a member of one of the crime families, nor is he an associate.  Certainly, if he was, and that identification were central to the charges, the Government would be well within its right to introduce such evidence.

However, the questions the jury has to answer at this trial do not require *any* information related to or referencing the crime families. References to organized crime are unnecessary to make the determination of whether Mr. Rosario was truthful in his statements to the FBI in January 2020 regarding knowledge of certain individuals and criminal establishments. Even if a limiting instruction by the Court were to make clear that Mr. Rosario is not charged with assisting or acting on behalf of one of the crime families, his mere association with a member or

10

associate will raise the specter of guilt and emotionally influence a verdict. *See United States v. Molton*, 743 F.3d 479, 482 (7th Cir. 2014).

The Five Families are a notorious criminal organization, and references to it at Mr. Rosario's trial would severely undermine his presumption of innocence and direct attention away from the relevant issues. Evidence of affiliation to the crime families, whether it be that of Mr. Rosario or testifying witnesses who knew him, would be a plain attempt to portray Mr. Rosario as a serious criminal, likely to have committed not just the crimes with which he has been charged, but others. Nothing can combat the unfair prejudice this kind of evidence would have on him. If the Government objects to this motion, we anticipate any arguments as to the evidence's purpose will have no merit. There is simply no need to introduce the Five Families at Mr. Rosario's trial in order for the jury to make factual determinations of guilt as to the crimes charged. Such explosive evidence would inevitably taint the trial, as it would be introduced only to show Mr. Rosario's propensity for criminality. For these reasons, the Court should deny any request by the Government to connect the crime families to this case.

## IV. The Court Should Strike the Introduction Section of the Indictment as Well as Counts One through Six

Under Federal Rule of Criminal Procedure 7, we move to strike surplusage from the Indictment filed against Mr. Rosario. Specifically, we seek to strike the Introduction,[2] which contains a description of the racketeering enterprise: detailing "La Cosa Nostra," the "Bonanno organized crime family of La Cosa Nostra," the family's hierarchy and structure, service in the family, roles in the family and requirements of membership, methods and means of the enterprise (principal purpose, acts of violence and conduct designed to prevent government detection of

---

[2] The sole reference to Mr. Rosario in the "Introduction" is under "The Defendants," as follows: "16. At various times relevant to this Indictment, the defendant HECTOR ROSARIO was an associate of the Bonanno crime family." As detailed in Point III, references to the Bonanno, or any other, crime family should be precluded.

11

their identifies, illegal activities and location of proceeds, including murder of others).

*Indictment*, 22 CR 355, 1-5.  We also seek to strike all counts where Mr. Rosario is not a named

defendant, which includes Counts One through Six in their totality.

Pursuant to Federal Rule of Criminal Procedure 7, "[u]pon the defendant's motion, the

court may strike surplusage from the indictment or information."  Such a motion "will be granted

only where the challenged allegations are 'not relevant to the crime charged and are

inflammatory and prejudicial.' *United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y.

1982) (citing authorities)."  *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990).  For the

reasons that follow, the portions of the indictment we seek to strike are not relevant to the

charged crimes and should therefore be stricken.

In determining whether the Introduction and Counts One through Six can be stricken

pursuant to Rule 7, it is critical to consider what Mr. Rosario is charged with and what he is not:

> COUNT SEVEN
> (Obstruction of Justice)
> 28. In or about January 2020, within the Eastern District of New York and
> elsewhere, the defendant HECTOR ROSARIO, together with others, did
> knowingly, intentionally and corruptly obstruct and impede, and attempt to
> impede, and attempt to obstruct and impede, an official proceeding, to wit: a
> federal grand jury investigation in the Eastern District of New York.
> (Title 18, United States Code, Section 1512(c)(2), 2 and 3551 et seq.)
>
> COUNT EIGHT
> (False Statements)
> 29. On or about January 27, 2020, within the Eastern District of New York and
> elsewhere, the defendant HECTOR ROSARIO did knowingly and willfully make
> one or more materially false, fictitious and fraudulent statements and
> representations in a matter within the jurisdiction of the executive branch of the
> Government of the United States, to wit: the Federal Bureau of Investigation
> ("FBI"), in that the defendant falsely stated to Special Agents of the FBI that (a)
> he did not know the identity of John Doe, an individual whose identity is known
> to the Grand Jury, and (b) he was not familiar with the gambling business known
> as 'Sal's Shoe Repair' located in and around 41 Merrick Avenue in Merrick, New
> York, when in fact, as ROSARIO then and there well knew and believed, he did

12

not know the identity of John Doe and was familiar with that gambling business.
(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

*Indictment*, 22 Cr 355, 12.

Given the nature of Mr. Rosario's charges, the contents of the Introduction and Counts

One through Six must be stricken as they are irrelevant, inflammatory and prejudicial.  As

described *supra*, the introduction contains details describing La Cosa Nostra, the Bonanno crime

family, various illegal activities and acts of violence (including murder).  Although Mr. Rosario

is named as an "associate" of the Bonanno crime family, he is not named in the racketeering

count (Count One) or in any racketeering act.  Similarly, he is not named in Count Two, charging

money laundering conspiracy or in Counts Three through Six, charging illegal gambling business

at various locations.  Perhaps most importantly, the Government has not proffered evidence

suggesting that Mr. Rosario's alleged connection to the Bonanno family is necessary to prove

any element of the charged offenses. As argued in Section III, any references to organized crime

would be highly prejudicial and direct attention away from the relevant issues. Therefore, the

Introduction and Counts One through Six of the Indictment should be stricken.

## V.    The Government Should Be Precluded from Introducing Mr. Rosario's Nassau County Police Department ("NCPD") Employment and Disciplinary Records

The Government should not be permitted to introduce evidence of Mr. Rosario's NCPD

employment or disciplinary records, as it is irrelevant to the charged conduct. Mr. Rosario was

employed by the NCPD from 2007 through 2019, making the rank of detective in 2013.  His

employment and disciplinary records, the vast majority of which were generated prior to the

alleged offense conduct, would turn the trial into a slideshow of events totally unrelated to the

trial. The waste of time, delay and confusion likely to be caused by such a presentation

substantially outweighs any probative value it may have and should therefore be precluded under Rule 403.

There is no dispute that Mr. Rosario was employed by the Nassau County Police Department between 2007 and 2019. We anticipate that fact will be elicited at trial. Employment records, which often contain personal identifying information, along with information regarding unrelated NCPD cases and individuals, have no tendency to make a pertinent fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. Unless the Government seeks to admit specific NCPD records that are direct evidence of the crime charged or provide necessary background for the jury to understand the Government's case, such evidence should be excluded.

Evidence regarding Mr. Rosario's disciplinary history with the NCPD, but unrelated to this case, should also be excluded as it is irrelevant, and any probative value is substantially outweighed by the danger of unfair prejudice. Such evidence could lead to a trial-within-a-trial. Civilian complaints, civil lawsuits or internal disciplinary reports, if any, whether substantiated or not, resolved or not, do not bear on the merits of this case. In fact, they run the risk of operating as improper propensity evidence pursuant to Rule 404(b)—potentially portraying Mr. Rosario as a police officer who believes he is above the law or abuses power. For example, in HR 901 (discussed *supra*), Mr. Rosario complains to CW-3 about being in court every day on trial for "all those beatings that we had."

Though we are not aware of any disciplinary records that go to Mr. Rosario's character for truthfulness, it is worth mentioning that courts have found that unsubstantiated civil rights allegations or dismissed lawsuits containing unproven allegations are not probative of an officer's character for truthfulness, and any probative value would be substantially outweighed

14

by danger of unfair prejudice. *See United States v. Dekattu*, 18 Cr. 474 (ARR), 2019 WL

885620, at *1 (E.D.N.Y. Feb 22, 2019); *United States v. Ahmed*, 14 Cr. 277 (DLI), 2016 WL

3647686, at *3 (E.D.N.Y. July 1, 2016)); *Phillips v. City of New York*, 871 F. Supp. 2d 200, 203

n.3 (E.D.N.Y. 2012).

      For these reasons, Mr. Rosario's NCPD employment and disciplinary records should be

precluded because they are irrelevant to the instant offense and could result in unfair prejudice

and jury confusion.

## VI.    The Government Should Be Precluded from Introducing Evidence Referencing Mr. Rosario's Unrelated Attorneys or Legal Matters

      The Government should be precluded from introducing evidence related to Mr. Rosario's

other legal matters. Such evidence is wholly irrelevant to the charged conduct and should not be

admitted, pursuant to Federal Rule of Evidence 401.

      Evidence related to any of Mr. Rosario's personal legal matters, such as the nature of the

case(s), legal fees and representation, has no tendency to make the existence of any fact of

consequence at this trial more or less probable than it would be without the evidence. *See*

*McKoy*, 494 U.S. at 440. This trial comes down to whether Mr. Rosario made materially false

statements to the FBI. From the discovery, it is known that the FBI did not inquire, nor did it find

it necessary to inquire, about Mr. Rosario's personal legal matters. That is because such

information is far beyond the scope of the relevant issues here and would serve no purpose other

than to confuse and mislead the jury. Its admission could have further prejudicial effect by

allowing the jury to make assumptions about Mr. Rosario's personal life or finances. To put it

simply, this evidence has no place at trial and should be excluded under Rule 401 because it has

no relevance or probative value.

15

**VII.    The Government Should Be Precluded from Introducing Evidence Related to Mr. Rosario's Girlfriend and Newborn Child**

The Government should be precluded from introducing the portion of DOJ 149-010, another recorded meeting, where Mr. Rosario and CW-3 talk about Mr. Rosario's girlfriend, their newborn baby, how she became pregnant and problems in their relationship.[3] This conversation is not only irrelevant to the charges, but it also more prejudicial than probative under a Rule 403 analysis.

As stated *supra*, Mr. Rosario is charged with obstruction of justice and making false statements to FBI.  Evidence related to his personal relationship and newborn child has no relevance to the charged conduct. If the Government articulates some basis as to how this portion of the recording is relevant, though we cannot imagine how, the balancing test of Federal Rule of 403 mandates its preclusion.  Rule 403 excludes otherwise relevant evidence if "the probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Here, Mr. Rosario makes unsavory comments about his girlfriend and his anger towards her, including "I want to choke this chick everyday."  Given the nature of the charges here, such comments would be unfairly prejudicial; this prejudice outweighs any probative value the evidence may have.

---

[3] Mr. Rosario, who was unaware that this conversation was being recorded, spoke candidly about his frustrations with his girlfriend, the fact that she had become pregnant and the current state of their relationship.

16

**VIII.  The Government Should Be Precluded from Introducing Evidence that Mr. Rosario Met Cooperating Witness ("CW-3") Through an Individual Named "Chandler"**

The Government should be precluded from introducing evidence that Mr. Rosario first met CW-3, a friend, through an individual named "Chandler (LNU)." Such evidence is irrelevant to the charged conduct and should not be admitted, pursuant to Federal Rule of Evidence 401.

Here, Mr. Rosario is charged with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2), and making false statements to the FBI in the January 27, 2020 interview, in violation of 18 U.S.C. § 1001(a)(2). Evidence pertaining to the particular individual through which Mr. Rosario first met CW-3 is wholly irrelevant to the charged offenses. No materials provided by the Government to Mr. Rosario, thus far, suggest that "Chandler (LNU)" is associated in any way with the alleged criminal conduct. Nor does mention of "Chandler (LNU)" provide any helpful background information on Mr. Rosario's relationship with CW-3. Mr. Rosario does not dispute that CW-3 is a family friend, whom he has known for many years. We anticipate that the existence and nature of their relationship will be central to the Government's case. Specific evidence related to "Chandler (LNU)['s]" introduction of the two, however, is not relevant and has no tendency to make a pertinent fact in this case more or less probable than it would be without it. As such, any mention of the individual is unnecessary and irrelevant to the trial and should be precluded.

<u>Conclusion</u>

For the aforementioned reasons, the Court should 1) preclude the Government from introducing evidence related to the "Blue Tequila"; 2) preclude the Government from introducing the following "other acts" evidence: a) evidence related to prostitution, b) evidence that suggests Mr. Rosario has engaged in or plans to engage in acts of violence, and c) evidence

17

that suggests Mr. Rosario provided advice on how to obtain a false police report for a car accident; 3) preclude the Government from referencing organized crime; 4) strike the introduction section of the Indictment as well as Counts One through Six; 5) preclude the Government from introducing Mr. Rosario's Nassau County Police Department ("NCPD") employment and disciplinary records; 6) preclude the Government from introducing evidence referencing Mr. Rosario's unrelated attorneys or legal matters; 7) preclude the Government from introducing evidence related to Mr. Rosario's girlfriend and newborn child; and 8) preclude the Government from introducing evidence that Mr. Rosario met a cooperating witness ("CW-3") through an individual named "Chandler."

Respectfully Submitted,

/s/ Louis M. Freeman
Louis M. Freeman
Nadjia Limani
Kestine Thiele

Dated: January 10, 2025
    New York, NY

18