UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA                                            :

       v.                                                                      :

HECTOR ROSARIO,                                                           :
                                                                           22 CR 355 (ENV)
                Defendant.                                           :
------------------------------------------------------------------------x

## **DEFENDANT HECTOR ROSARIO'S RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

**LOUIS M. FREEMAN**
Freeman, Nooter & Ginsberg
75 Maiden Lane, Suite 907
New York, NY 10038
(212) 608-0808

Nadjia Limani, Associate Counsel
Kestine Thiele, Mentee

*Attorneys for Hector Rosario*

**Introduction**

We write in response to the Government's motions *in limine* to: 1) admit evidence of the investigation of the Bonanno and Genovese crime families; 2) preclude evidence and argument concerning possible punishment and collateral consequences; 3) preclude evidence regarding Mr. Rosario's lack of criminal history; and 4) order the disclosure of Rule 16(b) discovery and trial exhibits the defense intends to introduce during the Government's case-in-chief.

**Argument**

A. **Responses to Government Motions *in Limine* II, III and IV[1]**

With respect to Government's motion *in limine* II, Mr. Rosario does not intend to introduce any evidence or argument concerning possible punishment and collateral consequences. Accordingly, this issue is moot.

The Government's third motion to preclude evidence related to Mr. Rosario's lack of criminal history is premature. Such evidence may become relevant if he decides to testify on his own behalf.

Finally, to address Government's motion *in limine* IV, the defense is aware of its disclosure obligations under Federal Rule of Criminal Procedure 16(b). At this time, we are not in possession of any Rule 16(b) discovery, and we do not oppose the Government's request for a February 10, 2025 deadline to produce any exhibits the defense will seek to admit during the Government's case-in-chief for purposes other than impeachment.

B. **Response to Government's Motion *in Limine* I to Admit Evidence Regarding the Federal Investigation of the Bonanno and Genovese Crime Families**

The Government moves for the admission of a wide array of evidence regarding its investigation of the Bonanno and Genovese crime families, comprised of three categories: 1)

---

[1] We first address Government motions II, III and IV, followed by I.

1

evidence of the Bonanno, Genovese and Gambino gambling operations and the government's investigation into those operations, 2) Mr. Rosario's alleged knowledge of those gambling operations and his efforts to shut down competition on behalf of the Bonanno crime family and 3) the nature and extent of Mr. Rosario's alleged relationship with the Bonanno crime family.

The Government asserts that the entirety of its proffered evidence is admissible as either direct evidence, including "acts that provide necessary background or context for a charged crime," Gov't Motions *in Limine* ("Gov't MIL"), 7, or as "other act" evidence under Rule 404(b).  For the reasons that follow, not all the proffered evidence is admissible; we will take each category of evidence in turn.

### 1. *The Government's Proffered "Illegal Gambling Operations" Evidence*

The Government moves to introduce evidence that "in 2020, the government had a years' long federal grand jury investigation into both the Bonanno and Genovese crime families and their involvement in and operation of numerous illegal gambling parlors in Queens and Long Island among other racketeering activity," which yielded the following information: "[F]rom August 2012 to at least August 2022, the Bonanno crime family operated illegal gambling businesses inside various coffee shops and sports clubs throughout Queens and Long Island, including La Nazionale Soccer Club, Glendale Sports Club and Soccer Club," and "the Genovese crime family operated illegal gambling businesses out of their own locations in Queens and Long Island, including Sal's Shoe Repair and the Centro Calcio Italiano Club." Id. at 2.  The Government also plans to introduce evidence that the Bonanno and Genovese crime families "jointly operated a lucrative illegal gambling business inside the Gran Caffe in Lynbrook, New York, for nearly a decade." Id.  It further asserts that these "gambling parlors

2

were the lifeblood of the crime families and generated substantial revenue, which was distributed to higher ranking members of each crime family." Id. at 3.

### a. "Illegal Gambling Operations" Evidence is Not Admissible as Direct Evidence

Evidence of any other crime, wrong or act does not fall within the purview of 404(b) of the Federal Rules of Evidence, "if it arose out of the same transaction or series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000). Such evidence would be admissible as direct evidence. With regards to the "illegal gambling operations" evidence referenced supra, the Government contends that "[s]uch evidence forms the factual predicate to the obstruction charges against the defendant and provides critical background for the government investigation the defendant sought to obstruct." Id. at 9. However, the Government cannot simply open the floodgates of admissibility by labeling evidence as "background or context for a charged crime."

Certain evidence the Government seeks to admit is unnecessarily laden with crime family references and details. For example, the Government intends to present evidence of the investigation into the Genovese crime family, which yielded the locations of two gambling parlors: Sal's Shoe Repair and Centro Calcio. This investigation led to a separate indictment, United States v. Macario, 22-CR-356 (ENV), the underlying conduct of which is not relevant to Mr. Rosario's case. As stated infra, any testimony of CW-1 and CW-2 regarding Sal's Shoe Repair *could* hypothetically be admissible as evidence of Mr. Rosario's false statements; however, detailing or even referencing the Genovese's association with the gambling parlor is unnecessary and confusing background evidence. The fact that a crime family runs the parlor has absolutely no bearing on any element of Mr. Rosario's charged crimes. It's lack of probative

3

value, and highly prejudicial effect, should leave the Court skeptical of the Government's true intention in admitting it.

Similarly, the fact that the Bonanno crime family was under investigation by the Federal Bureau of Investigation ("FBI") is not relevant to the crimes charged. The Government states: "[s]pecifically, the defendant's own participation in the underlying schemes shows that the defendant 'knew his actions were likely to affect an ongoing investigation.'" Gov't MIL, 10 (citation omitted). Indeed, the Government could argue to the jury, without specific reference to the Bonanno or Genovese crime families, that a false statement to the FBI regarding illegal gambling sites, impedes an investigation. That those behind the gambling sites were crime family members or associates is not a fact helpful to the jury's determinations in this case. Permitting the Government to set the stage with evidence of a years' long federal grand jury investigation into the Italian mob and its racketeering activity would inflame the jury by setting a wildfire in the jury box. See Defense Motions *in Limine* ("Defense MIL"), at 10-11. Mr. Rosario is not charged with racketeering or involvement in illegal gambling business. Though the crimes charged are related and exist on the same indictment, there is no credible argument that mention of the crime families at this trial is necessary.

Surely, the Government will present evidence of the illegal gambling sites, such as their names, locations, when they were operational, and individuals associated with them. As the Government noted, cooperating witnesses will detail their relationships with Mr. Rosario. One cooperating witness has been a long-time family friend to Mr. Rosario, and testimony and recorded meetings or calls could confirm that. Either witness's membership or association with the Bonanno crime family is unnecessary as background evidence to demonstrate Mr. Rosario's loyalty to them, especially considering an allegation, if admitted as evidence, that Mr. Rosario

4

was financially compensated for taking actions on their behalf. Certainly, as the Government could argue to the jury, the longstanding, trusting relationship and financial opportunity were both incentives enough for Mr. Rosario to engage in alleged criminal activity at their direction. As such, to ensure a fair trial, facts related to the gambling parlors' or the cooperating witnesses' connection to the crime families should be precluded entirely.

### b. "Illegal Gambling Operations" Evidence is Not Admissible as 404(b) Evidence

In United States v. Torres, the Second Circuit set forth the test for determining the admissibility of Rule 404(b) evidence:

> To determine if evidence was properly admitted under Rule 404(b), we consider 'whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant.' United States v. Scott, 677 F.3d 72, 79 (2d Cir. 2012) (internal quotations marks and citation omitted) (noting that this inquiry is derived from Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988)).

2023 U.S. App. LEXIS 1857, (2d Cir. Jan. 25, 2023), at *6-7. The Government argues that the entirety of their proffered evidence is proper Rule 404(b) evidence, as it shows Mr. Rosario's "motive to obstruct and lie, in order to prevent law enforcement from collecting incriminating evidence related to his involvement in the activities of the Bonanno crime family." Gov't MIL, 12. It further argues that "[t]his evidence shows an 'absence of mistake' or 'accident,' tending to disprove that defendant's statements—including his purported failure to recall certain information—were somehow an innocent mistake." Id.

However, the "illegal gambling operations" evidence does not meet the criteria for "other act" evidence pronounced by the Second Circuit in Torres. As an initial matter, the Government attempts to proffer permissible purposes for such evidence's admission—motive to lie and

5

absence of mistake. However, the added fact of the crime families' involvement is again not necessary for the Government to argue that Mr. Rosario had a motive to lie. The Government's proffered facts that Mr. Rosario, a police officer, knew about the illegal gambling location, Sal's Shoe Repair, and denied that knowledge to the FBI, gives them that argument, as well as the argument that there was no absence of mistake. It follows that any fact related to the *Bonanno's* involvement in the gambling parlor serves no additional purpose under Rule 404(b). As previously argued, specific reference to and details of the crime families' connection to the case is irrelevant, and any minimal probative value is outweighed by its prejudicial effect. As the Second Circuit reminds us in United States v. Wallach:

> Although we have adopted an 'inclusionary approach' to the introduction of similar act evidence as long as the evidence is not being introduced to show propensity, United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986), a district court must be careful to consider the impact of such evidence on the jury and to avoid the potential prejudice that might flow from its admission. See United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987) (probative value must exceed potential for prejudice); 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, para. 404[08] (1990).

935 F.2d 445, 472 (2d Cir. 1991).

### 2. *Mr. Rosario's Knowledge of the Gambling Operations and His Efforts to Shut Down Competition on Behalf of the Bonanno Crime Family*

Regarding Mr. Rosario's knowledge of the illegal gambling operations and his alleged efforts to "shut down the competition" on behalf of the Bonanno crime family, the Government intends to elicit testimony from both CW-1 and CW-2.[2] Specifically, the Government alleges that members of the Bonanno crime family paid Mr. Rosario to do their bidding with regard to a rival gambling establishment, specifically by being involved in a fake raid on Sal's Shoe Repair. The Government expects CW-1, who is an inducted Bonanno member, to testify that "in

---

[2] CW-1's identity has not been disclosed to the defense thus far. CW-2's identity is known, as the Government produced recorded conversations and phone calls created by CW-2.

6

approximately 2013 or 2014, he and CW #2 instructed the defendant to shut down a Genovese-run gambling parlor operated by Salvatore Rubino and located within Sal's Shoe Repair." Gov't MIL, 3. According to CW-1, Mr. Rosario was offered financial compensation for arranging the fake police raid, and CW-1 understood that this raid did in fact take place.

As proffered, CW-2, who is a Bonanno associate, will testify that "he directed the defendant to shut down Sal's Shoe Repair as well as other illegal gambling parlors operated by the Gambino crime family," and that after Mr. Rosario completed the directives, CW-2 paid him. Id. He will further testify that he "witnessed [Mr. Rosario] and his associates barge in, break one of the gambling machines and demand that Rubino tell them where they could find 'Joe Box,' a Genovese crime family associate who collected gambling proceeds from that location." Id. at 4. Lastly, CW-2 will testify that he paid Mr. Rosario to attempt to shut other Gambino gambling establishments in 2013 or 2014. To corroborate this testimony, the Government intends to call law enforcement witnesses who will testify that in May 2014, Rosario gave the Nassau County Police Department a "tip" about a Gambino gambling location.

As argued supra in Section B.1.a, evidence regarding Mr. Rosario's alleged knowledge of Sal's Shoe Repair, or any other illegal gambling location, could hypothetically be admissible as evidence of Mr. Rosario's false statements; but, evidence connecting those locations or the cooperating witnesses to the crime families is unnecessary and confusing background evidence. The Government need not mention, let alone detail the crime families' involvement in these illegal gambling locations to prove *any* element of the charged crimes. It has no probative value, and Mr. Rosario must be protected from the inevitable prejudice that would flow from its admission.

### 3. *The Nature and Extent of Mr. Rosario's Relationship with the Bonanno Crime Family*

7

Lastly, the Government intends to elicit testimony that shows Mr. Rosario's relationship of trust with CW-1 and CW-2, "complet[ing] the story of the charged crimes." Id. Specifically, as proffered, CW-2 will testify that they met in approximately 2008 or 2009 and became friends. He will further testify that he subsequently enlisted Mr. Rosario in 2018 to look up a suspected cooperator in a law enforcement database and Mr. Rosario complied. "Around the same time, CW #2 brought the defendant to his marijuana grow house which was filled with marijuana plants, and the defendant offered to help CW #2 transport the marijuana before he got caught with it by law enforcement." Id. at 4-5. CW-2 will also testify that Mr. Rosario offered to help him find a buyer for these large amounts of marijuana and "helped CW #2 obtain heroin and discussed a plan to conduct a fake police raid on a drug dealer in Hempstead in order to obtain drugs and money." Id. at 5.

The Government has proffered that CW-1 will testify his trust in Mr. Rosario stemmed from his close friendship with CW-2.

> CW #1 was introduced to the defendant through CW #2, and understood that he was a 'dirty cop.' In addition to attempting to shut down rival gambling parlors, CW #1 is expected to testify that the defendant demonstrated his loyalty to the Bonanno crime family when the defendant came to CW #1's house and alerted him that the defendant had seen a photograph of CW #1 at the Nassau County Police Department—i.e., that CW #1 was under criminal investigation. The defendant warned CW #1 about the investigation and advised him not to talk on his cellphone.

Id.

To start, the Court, for the aforementioned reasons, should not permit the Government to frame Mr. Rosario's relationships with CW-1 and CW-2, as a relationship to the Bonanno crime family. For the reasons stated in our motions *in limine*, the Government's proffered "bad acts" or "other acts" evidence, such as allegedly transporting and selling marijuana, obtaining heroin and

8

discussing a plan to rob a drug dealer by posing as law enforcement, using police credentials to unethically, if not illegally, look up suspected cooperators in a police database, and warning an inducted Bonanno member not to use a cellphone to discuss illegal activity, should be precluded. See Defense MIL, 4-6.

The Government's motion asserts that this evidence is admissible as direct evidence as it "explains the depth of the defendant's relationship and loyalty to the cooperating witnesses which further tends to show his motive in attempting to obstruct the grand jury investigation in 2020." Id. at 11. As discussed supra, the fact that Mr. Rosario and CW-2 had a close trusting relationship that spanned over a decade is not in dispute. Mr. Rosario's alleged loyalty to CW-1 and CW-2 could conceivably be established through this relevant, non-propensity evidence. Evidence related to Mr. Rosario's alleged knowledge of Sal's Shoe Repair, or other illegal gambling businesses, is direct evidence, relevant to this trial, because it goes directly to the question of whether Mr. Rosario obstructed justice and made false statements. Such evidence, going directly to the necessary jury determinations in this case, should be permitted, albeit with parameters set by the Court that prevent spillover of unnecessary, prejudicial facts. The evidence that the Government wants to admit through Rule 404(b), however, should not. It is not necessary foundation for the Government's argument that Mr. Rosario had motive to lie, and importantly, it fails the relevance weighing test under Rule 403. It is imperative that the Court takes extra caution to exclude evidence that could lead the jury believe Mr. Rosario has a propensity for criminal activity, once again, to ensure a fair trial. See Wallach, 935 F.2d. at 472.

## Conclusion

For the reasons set forth supra, the Court should deny Government's motion *in limine* I, and find motion II moot and III premature. We do not object to a February 10, 2025 deadline for

9

the production of exhibits we will use at trial during the Government's case-in-chief, not strictly used for impeachment purposes.

10