UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA      :
      :
      :    <u>SHORT-FORM</u>
      :    <u>MEMORANDUM & ORDER</u>
   -against-      :
      :    22-CR-355 (ENV)
      :
HECTOR ROSARIO,      :
      :
      Defendant.   :
------------------------------------------------------------- x

VITALIANO, D.J.

     The trial of former Nassau County Police Department ("NCPD") Detective Hector Rosario is set to start February 24, 2025. The parties have filed their respective motions *in limine* and oppositions. Rosario Mot. Limine, Dkt. 138; Gov't Mot. Limine, Dkt. 139; Rosario Opp., Dkt. 141; Gov't Opp., Dkt. 142. Having considered the parties' submissions, the pending pre-trial motions are resolved as explained below.

| (I) Government Motions | |
|:---:|:---:|
| <u>Motion</u> | <u>Ruling</u> |
| (A) The government moves to admit, as direct evidence of the charged crimes, evidence relating to the 1) illegal gambling operations of the Bonanno and Genovese organized crime families, | (A) In this *in limine* request, the evidence the government seeks to introduce relates to the gambling activities of organized crime families that are intertwined with the subject matter of Rosario's charges, including uncharged conduct by Rosario |

2) Rosario's knowledge of, and participation in, the Bonanno crime family's illegal gambling operations, and 3) Rosario's relationship with the Bonanno crime family. Dkt. 139 at 6, 11-14.[1]

himself. The government also seeks to admit evidence of Rosario's efforts to warn CW-1 that he was potentially under criminal investigation, of Rosario's willingness to help CW-2 move large quantities of marijuana, and of Rosario's use of his position as a detective to dig up information for CW-2 about a cooperating witness, Dkt. 139 at 16, all of which Rosario objects to under Rule 403 as, among other reasons, propensity evidence. Dkt. 141 at 9-10. The government counters that it is admissible as direct evidence to explain the "depth of friendship" between defendant and the cooperating witnesses and his loyalty to them, "which further tends to show his motive in attempting to obstruct the grand jury investigation in 2020," Dkt. 139 at 16, or, in the alternative, to show motive, opportunity, intent, absence of mistake, or lack of accident in obstructing an investigation and lying to FBI agents under Rule 404(b). *Id.* at 17.

"Evidence of other acts allegedly committed by a criminal defendant can be admitted under either

---

[1] All citations to pages in the record refer to the Electronic Case Filing System ("ECF") pagination.

of two theories: either as direct evidence of the charged offense, or as 'other crimes' evidence under Federal Rule of Evidence 404(b)." *United States v. Aguilar*, No. 20-CR-390 (ENV), 2023 WL 3807731, at *1 (E.D.N.Y. June 2, 2023); *see also United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989). Evidence of the defendant's involvement in the underlying scheme can be used to "complete the story of how [he] came to obstruct justice." *United States v. Servider*, No. 15-cr-174 (ENV), ECF No. 163 (May 10, 2018). Here, evidence of Rosario's knowledge and participation in illegal gambling operations is essential direct evidence illuminating the investigation Rosario allegedly sought to obstruct, and to showing motive and proving the element of corrupt action. 18 U.S.C. § 1512(c)(2). Evidence of other corrupt acts can be admitted to establish a relationship of trust between co-defendants, even when a defendant "did not contest the existence of this relationship." *United States v. Serrano*, 640 F. App'x 94, 98 (2d Cir. 2016). The instances the government seeks to introduce tend to explain Rosario's relationship, loyalty, and motive in

committing the charged conduct. As a result, the Court also finds them admissible under 404(b) to show Rosario had motive to prevent law enforcement from collecting evidence that may link him to the criminal activities of the Bonanno crime family. *United States v. Willoughby*, 860 F. 2d 15, 27 (2d Cir. 1988).

Defendant's argument that the government could make out its case without reference to organized crime falls flat. Dkt. 141 at 5. The false statements charge requires a false statement knowingly and willfully made. 18 U.S.C. § 1001(a)(2). This background, and Rosario's proximity to the crime families' illegal gambling, can show he "knew his actions were likely to affect an ongoing investigation." *United States v. Brooks*, 828 F. App'x 9, 11-12 (2d Cir. 2020); *United States v. Binday*, 804 F.3d 558, 591 (2d Cir. 2015). The proffer to which Rosario objects firmly does that; the law does not require the government to find substitute evidence to his liking.

Continuing to sing the same song, Rosario objects that evidence relating to an investigation into

the Genovese crime family, which yielded a separate indictment, *United States v. Macario*, 22-cr-356 (ENV), is not relevant to his case and should not be the font for evidence here. Dkt. 141 at 4. Yet Rosario also concedes that evidence regarding his "alleged knowledge of Sal's Shoe Repair, or any other illegal gambling location, could hypothetically be admissible as evidence of [his] false statements." Dkt. 141 at 8. The fact that proffered evidence has roots in multiple investigations and produced two indictments and a variety of individually charged offenses does not advance defendant's argument. *United States v. Bertuglia*, 10 F.3d 808 (9th Cir. 1993) at *2. The existence of other related indictments or charges does not require the government to try this case with an arm tied behind its back. The government is entitled to explain to the jury in this case why competing gambling parlors became targets of the cooperating witnesses and how their membership in rival crime families informed this intimidation scheme.

The cases cited by Rosario in his own motion *in limine* to wholly suppress mentions of mob

| | |
|---|---|
| | involvement, Dkt. 138 at 12-13, are neither on point, nor of assistance. Simply put, there is no bright line rule barring the admission of high visibility evidence and cases permitting the government to do so are plentiful. *United States v. Molton*, 743 F.3d 479, 482-83 (7th Cir. 2014) (collecting cases); *see also United States v. Rastelli*, 653 F. Supp. 1034, 1055 (E.D.N.Y. 1986) Here, while the government contends Rosario is merely an associate of the Bonanno crime family, his alleged involvement and relationship of trust with family members forms the factual predicate for the charged offenses, and the argument for its admissibility is compelling. Accordingly, the government's motion to admit the subject evidence is granted, while Rosario's cross motion is denied. *See* II(C), *infra.* This ruling, of course, does not grant the government a blank check. Rule 403 review will apply at trial; objections regarding cumulativeness or jury confusion, for example, made in good faith will be considered at that time. |
| (B) The government moves to preclude evidence and argument by Rosario | (B) Rosario indicates he does not intend to introduce any evidence or argument concerning possible |

| | |
|---|---|
| regarding possible punishment and collateral consequences. Dkt. 139 at 18. | punishment and collateral consequences. Dkt. 141 at 2. Accordingly, this motion is denied as moot. |
| (C) At the other end of the spectrum, in its request the government seeks to preclude Rosario from introducing evidence about his lack of criminal history. Dkt. 139 at 20-21. | (C) As the government itself concedes, such evidence becomes relevant and admissible if the defendant testifies, for the purpose of providing background information regarding his credibility as a witness. Dkt. 139 at 20, *see also United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988). Rosario, on the other hand, does not appear to contest this information's lack of relevance should he abstain from exercising his right to assume the witness stand. Dkt. 141 at 2. The motion, as a result, is granted, except if elicited from defendant as a witness at trial. |
| (D) In its last request *in limine*, the government asks that Rosario be ordered to disclose Rule 16(b) discovery and trial exhibits to be introduced during the government's case no later than February 10, 2025. Dkt. 139 at 22-24. The government likewise proposes a schedule for the disclosure of statements of defense witnesses other | (D) This motion is granted as unopposed. Rosario, presumably, has already turned over any Rule 16(b) discovery and trial exhibits he will seek to introduce during the government's case-in-chief. If such materials have not yet been turned over to the government by defendant, he shall do so forthwith. Rule 26.2 material shall be provided to the government no later than two days before a witness testifies. |

| than Rosario himself: That Rule 26.2 material be provided no later than two days before a witness testifies. *Id.* at 24. | |

| (II) Defense Motions | |
| --- | --- |
| Motion | Ruling |
| (A) Rosario moves under Rule 401(a) to preclude evidence related to the "Blue Tequila," an establishment he contends is irrelevant to any charged conduct. Dkt. 138 at 4-6. In the alternative, he moves under Rule 403 to preclude evidence of prostitution and narcotics trafficking activity at the Blue Tequila as highly prejudicial and without any significant probative value. *Id.* | (A) The government represents that it does not intend to introduce evidence relating to potential prostitution, gambling, or other illicit activities at the Blue Tequila. Dkt. 142 at 5. To the extent defendant's motion sought to preclude such evidence, it is denied as moot.<br><br>To the extent it is not moot, this request is denied. The government is entitled to admit evidence to complete the story of the charged crimes. To establish that its proffer is relevant and probative, the government intends to elicit limit testimony 1) from CW-2 that he owned the Blue Tequila and sometimes met with Rosario there, 2) from CW-1 and another witness that they each observed Rosario at the Blue Tequila, including with CW-2, and 3) from an FBI agent that, during the January 27, 2020 interview of |

| | |
|---|---|
| | Rosario, Rosario denied knowing CW-2 was involved with Blue Tequila before acknowledging, when specifically asked, that CW-2 may have had dealings with the establishment. *Id*. The proffered evidence proposed by the government is relevant and admissible since it tends to complete the story of the charged conduct and show Rosario's efforts to distance himself from CW-2 and the Bonanno crime family during his interview with federal agents. *United States v. Smothers*, 652 F. Supp. 3d 271, 284 (E.D.N.Y. 2023) (allowing facts "inextricably intertwined with the evidence regarding the charged offense" or "necessary to complete the story of the crime on trial"). Nor is this evidence, including that of the uncharged false statement, "any more sensational or disturbing than the crimes with which [Rosario] is charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). |
| (B) Elaborating on his request in 2(a), above, defendant seeks to bar the government from offering "other acts" evidence 1) related to or referencing | (B) As to the first two buckets of evidence, the government represents that it does not intend to offer such evidence in its case-in-chief. Accordingly, the motion directed at such evidence is denied as moot. |

| | |
|---|---|
| prostitution; 2) suggesting he has engaged in or plans to engage in acts of violence; 3) suggesting he provided advice on how to obtain a false police report for a car accident. Dkt. 138 at 6-12. Understanding that the government also seeks to admit the evidence under Rule 404(b) to prove motive, Rosario objects that its prejudicial impact outweighs any probative value it may have. | Focusing on the third request, this evidence can be used to lay out the background of the charged crimes and show a relationship of trust between Rosario and the cooperating witness.[2] Dkt. 142 at 10. Moreover, the subject uncharged conduct is no more inflammatory or prejudicial to Rosario than the charged conduct in this case. *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (allowing evidence of uncharged conduct no more inflammatory than the charged crimes)). Rosario's motion as to (3) is denied. |
| (C) Defendant seeks to preclude the government from referencing organized crime, including the mob or mafia, "The Five Families," "La Cosa Nostra," and any specific individual's position in or association with the crime families and the names of the crime families themselves under Rule 403. Dkt. 138 at | (C) For the reasons set forth in I(A), the request is denied. |

[2] The government filings refer to CW-2 as the cooperator involved in this exchange, Dkt. 142 at 10, while Rosario's filings suggest it is CW-3. Dkt. 138 at 11. The Court assumes the parties are in agreement about the real identity of the cooperator and one of these discrepancies is a typographical error.

| | |
|---|---|
| 12. He contends that such references are highly prejudicial and far outweigh any probative value they might have. | |
| (D) The defendant seeks to strike the introductory section of the indictment and counts one through six. Dkt. 138 at 13-15. | (D) The government represents that it will furnish a trial indictment without an introductory section and containing only the two counts charging Rosario. The government shall furnish a trial indictment to the parties and the Court no later than February 18, 2025. As a result, this request is denied as moot. |
| (E) Rosario seeks to preclude the government from introducing his NCPD employment and disciplinary records as irrelevant and prejudicial. Dkt. 138 at 15-17. | (E) Boiled down to its essence, defendant seeks to preclude the government from offering evidence as it represents it will seek to offer, if he testifies, of 1) his forgery of doctor's notes used to blunt the effect of the NCPD's shaving policy, 2) his concealment of his involvement in an internal affairs investigation, and 3) his provision of confidential law enforcement information to an interested civilian. Dkt. 142 at 6-9. The court considers each of these in turn.<br><br>Evidence of Rosario's alteration of previously-legitimate doctor's notes to secure himself a prolonged exemption from the NCPD's facial hair ban—as well as his signed letter to the |

commanding officer of the NCPD Medical Administration Office representing that he was "currently being treated" when he was not—is probative of his credibility, honesty and integrity under Rule 608. *Id.* at 8; *See United States v. Brown*, No. 07-cr-874 (KAM), 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) ("[A]cts such as forgery . . . are probative of untruthfulness, and are presumed admissible under Fed. R. Evid. 608(b)."). Rosario's motion is denied as to this request, and this will be a proper subject for cross-examination should he take the stand.

Defendant's failure to identify himself on a number provided to his fiancé as her partner, however, is not. The department only adjudged him guilty of forcing it to spin its wheels to identify him, not of any offense involving dishonesty. *Cf. Heatherington v. Meador*, No. 89-cv-7806, 1992 WL 398365, at *7 (E.D. Pa. Dec. 30, 1992), *aff'd*, 6 F.3d 779 (3d Cir. 1993). The risk of jury confusion to an implication that Rosario had been adjudged guilty of providing the restricted parking placards to his fiancé and thus to civilians further renders this evidence

| | |
|---|---|
| | inadmissible. Rosario's motion is granted as to this request.<br><br>Finally, the government will be permitted to introduce evidence that Rosario, with misrepresentations by omission, brought a civilian into a sensitive law enforcement discussion in which the civilian had an interest. Dkt. 142 at 8-9. The conduct is akin to using false names or impersonating a police officer or attorney, probative of his credibility, and a proper subject for cross-examination under Rule 608(b). *See, e.g.*, *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL), 2022 WL 179771, at *11 (S.D.N.Y. Jan 19, 2022) (allowing cross-examination of a witness about being impersonating a lawyer). Here, too, Rosario's motion is denied and the government's request is granted, should Rosario elect to take the stand. |
| (F) Defendant also seeks to preclude evidence referencing unrelated attorneys and legal matters, as well as his girlfriend and minor child. Dkt. 138 at 17-18. | (F) The government represents it "does not intend to introduce evidence relating to […] the defendant's girlfriend and/or child, or the defendant's personal legal matters." Dkt. 142 at 1. As such, this request, in its entirety, is denied as moot. |

| | |
|---|---|
| (G) Defendant seeks to preclude evidence that he met CW-3[3] through an individual named "Chandler" as irrelevant under Rule 401. Dkt. 138 at 19. | (G) For the limited purpose of explaining Rosario's relationship with CW-2, the government seeks to admit foundational testimony regarding how Rosario and CW-2 met because Chandler referred Rosario to CW-2's auto repair shop. As the government also represents that it "does not intend to elicit testimony from [CW-2] about his knowledge of Chandler's illegal activities or the extent of Chandler's relationship with the defendant," Rosario's motion is, consequently, denied. Dkt. 142 at 11. |

So Ordered.

Dated: Brooklyn, New York
      February 10, 2025

         /s/ Eric N. Vitaliano
         ERIC N. VITALIANO
         United States District Judge

---

[3] Here again, Rosario and the government identify different cooperating witnesses. The Court again presumes a typographical error and that the parties are in agreement about the cooperator's true identity.